RUDOLPH et al. v. BRYAN.

(District Court, S. D. New York. February 4, 1908.)

SHIPPING—SUPPLIES FURNISHED TO YACHT—LIABILITY OF OWNER.

Libelants furnished certain supplies to a yacht owned by respondent, preparatory to her going into commission under a charter. The supplies were ordered by the master, who was engaged by a broker, in whose hands respondent had placed the yacht for sale under an agreement between the broker and respondent that the latter should be at no expense in outfitting the vessel. By the terms of the charter the charterer was to pay for the supplies used, but after trial he refused to accept the yacht because of her unseaworthy condition. Libelants had no notice of the arrangement for a charter, but charged the supplies to the yacht and respondent, as owner. *Held*, that they were entitled to recover for the same from respondent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 323–325.]

In Admiralty.

Hyland & Zabriskie, for libellants.

Nicoll, Anable & Lindsay and Archibald R. Watson, for respondent.

ADAMS, District Judge. This action was brought by William H. Rudolph and others associated with him in business, to recover from Charles S. Bryan amounts claimed to be due for certain supplies furnished to the steam yacht Czarina in July and August, 1906, as follows:

July 28th, 1906; towing yacht from Mariner's Harbor, Staten Island, N. Y., to Tietjen & Lang Dry Dock, Hoboken, N. J.., .............. $ 50 00

August 7th, 1906; furnished 30 tons of coal to said yacht Czarina at $5.50 per ton...................................................... 165 00

August 7th, 1906; furnished 20 tons of coal to said yacht Czarina at $5.20 per ton...................................................... 104 00

August 11, 1906, furnished 4,000 gallons of water to said steam-yacht Czarina, at 1/2¢ per gallon........................................ 20 00

August 27, 1906, furnished 50 tons egg coal to said yacht Czarina at $5.85 per ton...................................................... 292 50

                                                                          ———————
                                                                          $631 50

The answer was a general denial but on the trial it was amended as follows:

"For a further and separate and distinct defense the respondent avers, on information and belief, that at the time the supplies in the libel and complaint were furnished the said yacht Czarina was under charter to Mr. Samuel Untermeyer and Dr. Seward Webb, and that said supplies were not ordered or received by respondent or used by him, nor by any one authorized to represent him."

It appears that the libellants were engaged in business in Erie Basin, Brooklyn, in towing and furnishing supplies, 'of the nature indicated. to vessels, and that on or about the dates mentioned, they delivered to the yacht the items of the account set forth above. It also appears. that the respondent had no personal connection with the ordering of them but it was done through the master and Mr. Cox, of Cox & Stevens, yacht brokers in New York, who had been employed by the respondent to effect a sale of the yacht, which had been lying unemployed at Mariner's Harbor, Staten Island, until she was towed, July 28th, to the Tietjen & Lang Dry Dock in Hoboken, New Jersey. She had been in Cox & Stevens' hands for a year or more prior to this time for the purpose of sale but no success had been attained although the brokers had been urged by the respondent to make special efforts to bring it about. Mr. Cox in the spring of 1906, advised the respondent that it would be a good thing to have the yacht put into commission because it would facilitate a sale. The respondent agreed with this, provided he should be at no expense, and Mr. Cox engaged the master for the boat, who selected the crew.

About this time, there was a prospect of chartering the yacht to Mr. Samuel Untermeyer. Some oral understanding was reached between him and the respondent through Mr. Cox, which subsequently, August 3d, was put in writing, as follows:

"Agreement of charter made and entered into between Charles S. Bryan, of the City and State of New York, Owner of the steam yacht Czarina, hereinafter called the Owner, party of the one part, and Samuel Untermeyer, of the City and State of New York, hereinafter called the Charterer, party of the other part.

(1) Whereby the said Owner agrees to let, and the said Charterer agrees to hire, the said yacht, from noon on the twenty-eighth day of July, to noon on the first day of October, 1906, for the consideration hereinafter named.

(2) The owner agrees to turn over the vessel to the charterer in the water in the harbor of New York as she stands, with all the gear, equipment, furniture and belongings, usual suitable and necessary for a vessel of her size and class.

*     *     *     *     *     *     *     *     *     *     *     *

(4) The Charterer agrees to take over the vessel for the purpose of putting her in commission in the harbor of New York, at noon on the twenty-eighth day of July, and to re-deliver her on or before noon on the first day of October, 1906, in New York harbor in as good condition as he received her except to the extent to which the owner is to insure her reasonable wear and tear only excepted.

(5) The Charterer also agrees to pay all running expenses of the yacht except as to losses assured against, from the date of actual delivery on Aug. 10th, and hereby warrants that she shall be redelivered free and clear of all liens whatsoever incurred by him during such period and further agrees to indemnify and save harmless the Owner from and against all such claims.

   *     *     *     *     *     *     *     *     *     *     *     *

(9) As the sole and full compensation to the owner for said charter and in full payment and satisfaction of all claims therefor, the charterer is to pay the expense of putting the boat in commission, not exceeding however the amount agreed upon with Messrs. Cox & Stevens, and the owner is to have no other claim or demand whatever upon the charterer hereunder.

(10) If for any reason the boat is not delivered to the charterer in full commission at noon on the 10th day of August, 1906, this agreement may at his option be declared null and void."

The amount referred to in § 9 of said agreement was $3,000. Mr. Untermeyer paid some $950. of this amount, $500. prior to August 11th and $450. subsequent thereto.

There was no actual delivery of the yacht to Mr. Untermeyer until the 11th of August, when he accepted her conditionally upon her being seaworthy. She was under the contract to have been delivered on the 10th but was not then in condition for service, owing to a defective boiler, which was still leaking on the 11th when Mr. Untermeyer went aboard for a provisional trial. The Czarina (D. C.) 152 Fed. 297, 299. She proved to be unsatisfactory and in a few days was rejected by him and returned to the owner, who, when advised of it by Mr. Cox said, that "he wasn't surprised, in a way."

The libellants had no notice of these arrangements respecting the chartering. They delivered the supplies in the ordinary course of business, charging them to the yacht and owner. They knew nothing of the charterer's connection with the boat and, as far as appears, nothing occurred by which they were acquainted in any way with the fact that the boat was being repaired under a contract which, if carried out, might have made the charterer liable for these supplies. The contract, however, was not carried out because the yacht was unseaworthy and it is very doubtful, under the circumstances, if there could be any recovery from the charterer. The respondent's proctor, in moving to dismiss, said, evidently referring to the charterer:

"I move to dismiss the libel on the ground that the libellants' proof has failed to make out a case against Mr. Bryan. It has shown that the supplies were ordered by persons having no representative connection with Mr. Bryan; it shows that they went on board at a time when Mr. Bryan had divested himself of the use and control of the boat, and I will add, by way of suggestion, that the persons who are responsible and to whose responsibility the evidence points are entirely responsible, so that the libellants need suffer no hardship by this decision. I want to say in conclusion that I have stated to counsel for libellants that he was after the wrong man, and that Mr. Bryan was not liable. for reasons which have been made clearly to appear to your Honor in the evidence, and I respectfully ask that the libel be dismissed."

If it be true, as I have suggested, that there could be no recovery against the charterer, what remedy would the libellants have for the value of these supplies? I think it is clear that they have a claim against the owner for which he must respond, notwithstanding any agreement he may have had with Mr. Cox that he should not be liable for the expense of putting the vessel in commission.

Decree for the libellants, with an order of reference.