STEAMSHIP OVERDALE CO., Limited, v. TURNER.

(District Court, E. D. Pennsylvania.   July 2, 1913.)

No. 30 of 1913.

ADMIRALTY (§ 14*)—JURISDICTION—MARITIME CONTRACTS.

A contract by which a dealer in coal agreed to furnish to the owner of a line of steamships at certain prices all the normal necessary bunker coals that might be required by the buyer for the use of all of its vessels is not a maritime contract with respect to any part of it which remains executory, and a court of admiralty is without jurisdiction of an action against the seller for its breach by failing to supply coal demanded by one of the buyer's vessels.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 177–180; Dec. Dig. § 14.*]

In Admiralty.   Suit by the Steamship Overdale Company, Limited, against Alfred Turner, doing business under the name of Colin & Turner.   On exception to libel.   Exception sustained.

Edward F. Pugh, of Philadelphia, Pa., and Convers & Kirlin, of New York City, for libelant.

Howard M. Long and Abraham Israel, both of Philadelphia, Pa., for respondent.

THOMPSON, District Judge.   This is an action in personam to recover damages for the alleged breach of a contract whereby the respondent agreed to furnish to the libelant company "all the normal, necessary bunker coals that may be required by the buyers for the use of all the steamers of which they are the registered managing owners except when otherwise bound by charter."   The libelant claims damages arising from the failure of the respondent to supply the steamship Overdale at Norfolk, Va., with 900 tons of bunker coal at that port, and avers that by reason of the default of the respondent the master loaded the Overdale at the best terms which he was able to obtain at Norfolk, whereby the libelant was compelled to pay $1,476.50 more than the price named in its contract with the respondent, which amount is claimed as damages, together with damages for nine hours' delay to the vessel in loading the coal, amounting to $159.44.   The respondent excepts to the libel upon the ground:

"That the damages claimed by the libelant arose from the breach of the contract set forth in said libel, which is not an admiralty or maritime contract, nor an admiralty or maritime cause of action, and the cause of action so set forth is not within the jurisdiction of this honorable court."

The contract in this case is similar to that under consideration in the case of Diefenthal v. Hamburg American Line (D. C.) 46 Fed. 397, where to quote the language of Judge Billings:

"The respondents were owners of a number of steamers running between New Orleans and various European ports.   They made a contract, whereby it was agreed that the libelants would, for the period of one year, furnish and deliver to the respondents on board of their several vessels all the meat, eggs, and vegetables required as supplies for the passengers and crews of said

boats at fixed prices. The libel further propounds that the number of respondents' boats departing within the year from New Orleans was 43; that the execution of the contract was entered upon, and 2 boats had been furnished with supplies, which, at the agreed prices at that season of the year, caused a loss to the libelants; and that the respondents, refusing to carry out thereafter the said contract, have caused a loss to the libelants of the full sum of $10,000. The contract, therefore, was a contract whereby the libelants agreed to sell and deliver, and the respondents, who were owners of vessels engaged in foreign commerce, agreed to purchase and receive, at enumerated prices, the supplies which such vessels might require at the port of New Orleans for the period of one year."

After a discussion of the leading authorities upon the question as to what are and what are not maritime contracts, Judge Billings proceeds in his opinion at page 399:

"This is a contract relating to the furnishing of supplies. But it is, after all, not a contract where, until the supplies are actually furnished, the contractors relied upon any ship, but upon the other contracting party. 'The proximate and not the remote cause is looked to as the source of jurisdiction in admiralty.' Dunl. Adm. Pr. marg. p. 44. It was not a contract for supplies for a ship, except that the wants of the 43 ships were to furnish the measure of the extent of what was to be furnished—i. e., the contract related to navigation only so far as concerned amounts. For all other purposes it was a general contract for the sale and delivery of provisions, and, according to the distinction which has been made in the cases above referred to both in England and in this country, though having ulterior reference to navigation, is still one for the refusal to carry out which, by the defendants, the plaintiffs must have their remedy in the common-law courts, and not in the court of admiralty. It need not be held that there could not be an admiralty suit in some cases where there is no maritime lien. But where the contract is for supplies, to bring it within the admiralty jurisdiction it must come within the reason that brings materialmen within the dominion of admiralty courts—i. e., it must appear that the necessities or conveniences of ships in ports remote from home ports require that a credit should be given and a debt created which, though arising on land, are distinctively maritime, because necessary to maritime commerce as conducted by ships. It must begin and end in the necessities of a particular vessel for her own voyage. Where owners group together a large number of vessels, and make annual contracts for their supplies, the admiralty jurisdiction does not include them, because the reason for it does not. The objection to the jurisdiction, which it seems to me must prevail, is that this contract, though relating remotely to navigation and maritime commerce, is separated so far from them that it did not spring from the necessities of navigation, and is not within the considerations which make it essentially and distinctively maritime, and, though in part executed, is not, with reference to damages for its further nonexecution, within the jurisdiction of the courts of admiralty. The exception to the jurisdiction must be maintained."

I think the reasoning of Judge Billings applies to the present case and should be followed. The decision was approved in the case of Marquardt v. French (D. C.) 53 Fed 603; in The Harvey and Henry, 86 Fed. 656, 30 C. C. A. 330, which cases were cited and followed by Judge McPherson in this district in Reliance Lumber Co. v. Rothschild (D. C.) 127 Fed. at pages 748 and 749; in The City of Clarksville (D. C.) 94 Fed. 201; and in The Mary F. Chisholm (D. C.) 129 Fed. 814.

If the respondent had offered to deliver coal to the Overdale, and the master of the vessel had refused to accept delivery, the respondent

would have had no right of action in admiralty, either in rem or in personam.

"The admiralty jurisdiction in cases of contract depends, primarily, upon the nature of the contract, and is limited to contracts, claims, and services purely maritime, and touching rights and duties appertaining to commerce and navigation. 1 Conk. Adm. 19; People's Ferry Co. v. Beers, 20 How. 393 [15 L. Ed. 961]."

See, also, the note to The Richard Winslow, 18 C. C. A. 347, where a careful collation is made of the cases bearing upon the question of admiralty jurisdiction as to matters of contract.

In the present case the contract was between the owner of a line of steamships and a firm engaged in the sale of coal for a general supply of coal at certain prices, the quantity to be measured by the requirements of the libelant for use of all its vessels. Until the contract was executed, no particular vessel or no particular voyage was in contemplation of either of the parties. It had no reference to any particular maritime service or maritime transaction, nor to the navigation, business, or commerce of the sea. If coal had been supplied to the Overdale, the contract would apply as to the coal delivered to the navigation or commerce of the particular vessel, and admiralty would have jurisdiction (Berwind v. Schultz [C. C.] 28 Fed. 110; Rudolph v. Bryan [D. C.] 161 Fed. 233); or if the contract, being purely executory, had been for performance of some maritime service, admiralty would have had jurisdiction as in the case of Boutin v. Rudd, 82 Fed. 685, 27 C. C. A. 526, where admiralty jurisdiction was sustained in a suit for breach of contract of towing; or in Baltimore Steam Packet Company v. Patterson, 106 Fed. 736, 45 C. C. A. 575, 66 L. R. A. 193, where jurisdiction was sustained for breach of contract to furnish a cargo to a vessel; or in Graham v. Oregon Railroad & Navigation Co. (D. C.) 135 Fed. 608, where jurisdiction was sustained on the same ground; or in Maury v. Culliford (C. C.) 10 Fed. 388, where the suit arose by reason of the vessel owner's failure to furnish a vessel under a charter party; or in The Strathnairn (D. C.) 190 Fed. 673, where admiralty jurisdiction was held to attach for a breach of contract to load a cargo on a vessel.

But in the present case the contract was not such as to give reciprocal rights to the parties to sue in admiralty for nonperformance, and the remedy of the libelant is therefore in the courts of law for breach of a contract not maritime in its nature.

The exception must therefore be sustained.