MILESTONE SHIPPING,
S.A., Plaintiff,

v.

ESTECH TRADING LLC,
et al., Defendants.

No. 11 Civ. 0014(VM).

United States District Court,
S.D. New York.

Feb. 7, 2011.

Claurisse Ann Campanale–Orozco, Thomas Leonard Tisdale, Tisdale Law Offices, L.L.C., New York, NY, for Plaintiff.

James C. Winton, John Siegal, Baker & Hostetler LLP, Garth S. Wolfson, Mahoney & Keane, LLP, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

This action arises out of a maritime dispute between plaintiff Milestone Shipping, S.A. ("Milestone") and defendants Estech Trading, LLC ("Estech") and American Energy Services, Inc. ("AES", and together with Estech, "Defendants"). By Order dated January 3, 2011 (the "Attachment Order"), the Court granted Milestone's ex parte motion for the issuance of a maritime attachment and garnishment with regard to certain funds (the "Attached Funds") alleged to be held in an escrow account (the "Escrow Account") under the control of garnishee Mahoney & Keane, LLP ("Mahoney"). By letter dated January 11, 2011, AES requested a pre-motion conference in connection with a proposed motion to vacate the Attachment Order (the "Vacatur Motion"). AES also sought to move for orders (1) declaring that its ownership and right to immediate possession of the Attached Funds is not subject to arbitration under an escrow agreement between Milestone and AES's co-defendant Estech (the "Escrow Agreement"); and (2) directing Mahoney to immediately return the Attached Funds to AES.

At the Court's direction, Milestone responded by letter dated January 13, 2011, and also indicated its intention to cross-move for an order directing Mahoney to release the Attached Funds to Milestone's possession. The Court held a telephonic hearing on January 19, 2011 regarding the Vacatur Motion (the "January 19 Hearing"), as required by Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure (the "Supplemental Rules"), at which Milestone and AES appeared, but Estech did not. On January 19 and 20, 2011, the Court received additional letter submissions from Milestone and AES, respectively, and, in response to a Court Order dated January 20, 2011, the parties submitted a final, joint letter on January 26, 2011 (the "Joint Letter").

Taking the correspondence described above into consideration, the Court deems AES's Vacatur Motion fully submitted. Based upon these submissions, as well as the arguments presented during the January 19 Hearing, and, for the reasons described below, the Court DENIES the Vacatur Motion. However, the Court finds the parties' other proposed motions to be premature and therefore declines to rule on them at this time.

## I. *BACKGROUND*

This action arises out of the alleged breach by Estech of two maritime contracts, a charter party for the shipping of iron ore from Mexico to China (the "Charter Party") and the Escrow Agreement, entered into between Milestone and Estech. As a precondition to entering into the final Charter Party, Milestone first required Estech to sign the Escrow Agreement, whereby Estech would deposit $500,000 into the Escrow Account under the control of escrow agent Mahoney. The Escrow Account was to serve as security for Milestone in the event that Estech failed to fulfill certain contractual obligations specified in both the Charter Party and the Escrow Agreement. However, for reasons unclear on the current record, Estech did not itself put up the escrow funds; rather, AES, which was not a party to either the Charter Party or the Escrow Agreement, transferred $500,000 to Mahoney on Estech's behalf. This transfer was effected prior to the execution of the Escrow Agreement pursuant to a separate trust agreement (the "Trust Agreement"), which was memorialized in an e-mail from Mahoney to AES and provided that the $500,000 would remain in trust in Mahoney's possession unless and until the Escrow Agreement between Milestone and Estech was finalized. It seems to have been envisioned, by Milestone at least, that, upon execution of the Escrow Agreement, the trust funds would automatically be released from trust and become subject to the Escrow Agreement as pledged security for the Charter Party. AES argues, however, that pursuant to the terms of the Trust Agreement, conversion of its funds from trust to escrow could occur only upon an explicit direction to Mahoney by AES, which AES states that it never gave. Nevertheless, these are the funds that Milestone sought to attach, and they became the Attached Funds pursuant to the Attachment Order.

## II. *DISCUSSION*

### A. *THE VACATUR MOTION*

#### 1. *Legal Standard*

█ "The power to grant attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal court under Article III of the Constitution." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437 (2d Cir.2006). Historically, the purpose of this power has been two-fold: to gain jurisdiction over an absent defendant; and

to assure satisfaction of a judgment. *See id.*

██ Supplemental Rule B provides in relevant part, "[i]f a defendant is not found within the district ... a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process." Fed.R.Civ.P. Supp. R. ("Supp. R.") B(1)(a). Therefore, an ex parte attachment should issue if the relevant filing and service provisions of Supplemental Rules B and E are satisfied and the plaintiff shows that "(1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping*, 460 F.3d at 445.

██ Where a plaintiff has secured the attachment in conformance with the Supplemental Rules, equitable vacatur is appropriate only in limited circumstances. *See ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 113 (2d Cir.2009). Thus, a "district court may vacate [an] attachment if the defendant shows ... that (1) the defendant is subject to suit in an convenient adjacent jurisdiction; (2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or (3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." *Id.* (emphasis in original). While the plaintiff bears the burden of demonstrating that an attachment was properly ordered, the party challenging attachment must establish

equitable grounds for vacatur. *See id.* at 113 n. 6.

### 2. Analysis

AES offers three arguments in support of its Vacatur Motion. First, it argues that Milestone has not provided evidence of a fully executed Charter Party and therefore cannot state a prima facie maritime claim against either defendant. Next, AES contends that even if a valid claim lies against Estech, which entered into the two contracts at issue here, the Attached Funds are the sole property of AES, held in trust pursuant to the Trust Agreement, and thus not properly subject to the Escrow Agreement or maritime attachment. Finally, AES asserts that even if the Attachment Order was properly issued, the Court should grant equitable vacatur because, according to AES, Milestone is a "sham corporation" and suit would be more convenient in the state of Ohio, where both Defendants can be found. The Court finds AES's arguments unpersuasive.

### a. Issuance of the Maritime Attachment

██ As an initial matter, Milestone has met its burden of establishing that its application for the Attachment Order was proper under Supplemental Rules B and E.

██ First, while AES argues that no prima facie admiralty-claim can lie against either party in the absence of a fully executed Charter Party,[1] Milestone's Verified Complaint also alleges breach of the Escrow Agreement, which contains the same terms alleged to have been breached in the Charter Party.[2] It is well-established in

---

1. The copy of the Charter Party submitted by Milestone does not appear to have been signed by Estech.

2. Milestone's January 19, 2011 letter attached a fully executed copy of the Escrow Agree-

ment—signed by Milestone, Estech and Mahoney as escrow agent—and AES has not asserted any defect in that agreement.

this Circuit that an agreement to guarantee the performance of a maritime contract-such as the Escrow Agreement, here-is maritime in nature. *See Classic Maritime Inc. v. Limbungan Makmur SDN BHD*, 646 F.Supp.2d 364, 369 (S.D.N.Y. 2009) (*citing Compagnie Francaise De Navigation Vapeur v. Bonnasse*, 19 F.2d 777, 779 (2d Cir.1927)). Therefore, Milestone has stated a prima facie admiralty claim against Estech.

■ Further, although only Estech, and not AES, was a party to the Escrow Agreement, the Verified Complaint also advances alter-ego and corporate veil-piercing theories against AES. In particular, Milestone asserts, among other things, that Estech is an agent or shell corporation dominated by AES, that AES agreed to fund the Escrow Account on Estech's behalf, and that the companies share a contact phone number published in trade journals which rings at Estech's office.[3] While AES disputes Milestone's allegations and declares in the Joint Letter that there is no corporate relationship between Estech and AES, its response raises as many questions as it answers. The determination of alter-ego liability is a fact-intensive inquiry, whose primary concerns are "(1) whether the entities in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir.2008); *see also Classic Maritime Inc.*, 646 F.Supp.2d at 371 (listing factors for consideration in determining alter-ego status). Here, without a

fuller record aided by proper discovery, AES can neither extinguish all questions of fact nor defeat Milestone's claim against it as a matter of law. *See REA Navigation, Inc. v. World Wide Shipping Ltd.*, No. 08 Civ. 9951, 2009 WL 3334794, *2 (S.D.N.Y. Oct. 14, 2009) (noting that neither of the two standards currently employed in the Second Circuit to evaluate a showing of a valid prima facie admiralty claim requires the plaintiff to prove its case at the Supplemental Rule E(4)(f) stage); *Totalmar Navigation Corp. v. ATN Indus., Inc.*, No. 08 Civ. 1659, 2008 WL 5111316, *4 (S.D.N.Y. Dec. 3, 2008) ("[I]n ruling on a motion for vacatur [of a maritime attachment,] the district court should not conduct a full-fledged inquiry into the merits of the plaintiff's claim."). For the purposes of adjudicating the propriety of the maritime attachment, therefore, the Court finds Milestone's claim against AES to be sufficiently pled.

The Court turns next to *Aqua Stoli Shipping's* third prong, *i.e.*, whether the Attached Funds are the property of a properly named defendant and found in this District. Since the Court concludes that prima facie admiralty claims lie against both Defendants, however, identifying the actual owner of the Attached Funds is, at this juncture, unnecessary. The Attached Funds may be subject to the Escrow Agreement, as Milestone argues, or they may have remained the sole property of AES via the Trust Agreement, as per AES's response. Either way, Supplemental Rule B permits attachment of a

---

3. In the Joint Letter, Milestone further states that an individual named Dan Slane held himself out, through trade journal advertisements and in negotiations with Milestone's London-based solicitors, to be a representative of both AES and Estech. Several courts in this District have found that the Court may consider such evidence in weighing the sufficiency of Milestone's Verified Complaint. *See*

*SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06 Civ. 15375, 2008 WL 4900770, *1 (S.D.N.Y. Sept. 10, 2008) (recognizing that a district court is "clearly permitted to consider evidence outside the pleadings submitted" on a motion to vacate an order of attachment) (*citing Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 50–51 (2d Cir.2008)).

"defendant's tangible or intangible personal property," irrespective of whether that property is related to the dispute between the parties, *see* Supp. R. B(1)(a), and there can be no dispute that the Attached Funds, which the parties do not dispute are located in this District, are the property of at least one of the Defendants.

Consequently, because the two remaining elements required under *Aqua Stoli Shipping* are satisfied—neither defendant can be found in this District and there is no statutory bar to attachment—the Court finds that the Attachment Order was properly issued.

### b. *Equitable Vacatur*

■ AES's arguments for equitable vacatur are equally misplaced. AES's uncorroborated and essentially ad hominem attack on Milestone as a "sham corporation with no citizenship of any substance" (*see* January 11 Letter (Docket No. 12) at 2) cannot overcome the deference due to plaintiff Milestone's preferred choice of venue—which, notably, conforms with the forum selection clauses in both the Escrow Agreement and the Charter Party. In any event, the Court is unaware of any reliable geographical authority which depicts Ohio, AES's proposed "convenient" alternative jurisdiction, to be "adjacent" to the Southern District of New York. *See ProShip-Line*, 585 F.3d at 113 (holding that a court may grant equitable vacatur where "the defendant is subject to suit in a convenient *adjacent* jurisdiction." (emphasis added)); *Aqua Stoli Shipping*, 460 F.3d at 444 ("The concept of 'convenience' ... is a narrowly circumscribed one [whose classic example would be] [a]n 'across the river' case, where ... assets are attached in the Eastern District [of New York] but the defendant is located in the Southern District [of New York].")

Therefore, AES's motion to vacate the Attachment Order is denied.

### B. *ADDITIONAL MOTIONS*

In addition to its motion for vacatur, AES has indicated its intention to move for orders (1) declaring that AES's ownership and right to immediate possession of the Attached Funds is not subject to arbitration under the Escrow Agreement; and (2) directing Mahoney to immediately return the Attached Funds to AES. Further, Milestone suggested its intention to cross-move for an order directing Mahoney to release the Attached Funds to its possession. Each of these proposed motions raises final merits issues that are not ripe for resolution at this preliminary stage of the litigation. *See Chiquita Int'l Ltd. v. MV Bosse*, 518 F.Supp.2d 589, 597 (S.D.N.Y.2007) ("[A] detailed discussion of the merits ... has little bearing on the motion to vacate, which is decided based on whether a prima facie claim is shown and technical requirements for attachment have been met."). Consequently, the Court declines to rule on these motions at this time.

### III. *ORDER*

For the reasons set forth above, it is hereby ORDERED that the motion (Docket No. 12) of defendant American Energy Services, Inc. to vacate the Court's January 3, 2011 Order of Maritime Attachment and Garnishment is DENIED; and further it is

**ORDERED** that the parties shall confer and prepare a proposed Case Management Plan in the form provided on the Court's website, to be submitted to the Court at an initial conference on this action scheduled for March 18, 2011 at 1:00 p.m.

**SO ORDERED.**