CHIQUITA FRESH NORTH AMERICA, LLC, Dole Fresh Fruit Company, S. Katzman Produce Inc. and Katzman Berry Corp., Plaintiffs,

and

Fierman Produce Exchange Inc. and Morris Okun, Inc., Intervening Plaintiffs,

v.

LONG ISLAND BANANA CORP., Suffolk Banana Co. Inc, Thomas J. Hoey, Yolanda Huey, Brook Enterprises Ltd., HB Realty Corp. and Stuls Holding Corp., Defendants.

No. 14–CV–982 (ADS)(AKT).

United States District Court, E.D. New York.

Signed June 23, 2014.

McCarron & Diess by Gregory Adam Brown, Esq., of Counsel, Melville, NY, for Plaintiffs and Intervening Plaintiffs.

Herrick Feinstein LLP by Robert L. Rattet, Esq., James Glucksman, Esq., of Counsel, New York, NY, for Defendants.

Goetz Fitzpatrick LLP by Gary M. Kushner, Esq., of Counsel, New York, NY, Chapter 11 Counsel for Defendants Long Island Banana Corp. and Suffolk Banana Co. Inc.

Kreinces & Rosenberg PC by Leonard Kreinces, Esq., Howard S. Rosenberg, Esq., of Counsel, Westbury, NY, for PACA Creditor D'Arrigo Bros. Co. of N.Y. Inc.

Lawrence A. Omansky, Esq., New York, NY, for Defendants Thomas J. Hoey and Brook Enterprises Ltd.

LaMonica Herbst and Maniscalco by Joseph S. Maniscalco, Esq., of Counsel, Wantagh, NY, for Creditor 28 William Street Corp.

Stokes Law Office LLP by Craig Alan Stokes, Esq., of Counsel, San Antonio, TX, for Creditor Circus Fruits Wholesale Corp.

Sills Cummis & Gross PC by Joshua Nicholas Howley, Esq., William Tellado, Esq., of Counsel, Newark, NJ, for Interested Party Citibank, N.A.

Frank A. Maura, Jr., Interested Party pro se.

## DECISION AND ORDER

SPATT, District Judge.

On February 14, 2014, the Plaintiffs Chiquita Fresh North America, LLC; Dole Fresh Fruit Company; S. Katzman Produce Inc.; and Katzman Berry Corp. (collectively, the "Plaintiffs") commenced this action against Long Island Banana Company ("LIB"), Suffolk Banana Co. ("Suffolk"), and Thomas J. Hoey (collectively, the "Defendants") to enforce the trust provisions of Section 5(c) of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA"). The Plaintiffs allege that they sold and delivered to the Defendants in interstate commerce wholesale quantities of produce worth $719,515.85

and that the Defendants failed to pay for the goods when payment was due.

Also, on February 14, 2014, the Court entered a temporary restraining order ("TRO") prohibiting the dissipation or alienation of any assets of LIB and Suffolk pending a hearing on the Plaintiffs' motion for a preliminary injunction. The Court required the Plaintiffs to post a bond of $25,000.

On March 7, 2014, the parties agreed to a consent preliminary injunction placing various restrictions on the Defendants' assets and properties and agreeing to a procedure to assert PACA claims. The Court approved the consent preliminary injunction on March 8, 2014 (the "Consent Injunction"). Less than a week later, on March 14, 2014, the Court directed the release of the bond.

On March 26, 2014, the Plaintiffs submitted a letter contending that the Defendants were negotiating the sale of certain real property located at 596 Merrick Road in Lynbrook, New York (the "596 Property") without the approval of the Plaintiffs or the Court. In particular, the Plaintiffs had learned that the Defendant Brook Enterprises Ltd. ("Brook"), a company that is apparently wholly owned by Hoey, was in the process of selling the 596 Property. The Plaintiffs requested an order directing the Defendants' counsel to deposit the proceeds from the sale of the 596 Property into the LIB escrow account established pursuant to the Consent Injunction. The Plaintiffs asserted that the 596 Property, even if not owned by LIB or Suffolk, was a PACA trust asset.

By letter dated March 27, 2014, the Defendants opposed the relief sought by the Plaintiffs with regard to the 596 Property. The Defendants contended that the acquisition of the 596 Property was never funded with any PACA proceeds or with any proceeds that could possibly be connected to the current PACA plaintiffs. Therefore, the Defendants asserted that the 596 Property was not a PACA asset. The Defendants further asserted that the PACA claims in this matter were likely to be satisfied in full, so that no risk of irreparable harm existed in the event the 596 Property was excluded from the terms of the Consent Injunction.

On that same day, March 27, 2014, the Court scheduled a hearing for April 4, 2014. Pending the hearing, Brook apparently concluded the sale of the 596 Property and distributed the proceeds of the sale to individuals and entities other than the Defendants in this case.

According to the Plaintiffs, in preparing for the April 4, 2014 hearing, they learned about the connection between LIB, Suffolk, Brook, HB Realty Corp. ("HB") and Stuls Holding Corp. ("Stuls").

On April 4, 2014, the Court held a hearing, at which the parties brought to the Court's attention the fact that on April 3, 2014, LIB and Suffolk filed separate petitions seeking relief from their creditors pursuant to Chapter 11 of the Bankruptcy Code. During the April 4, 2014 hearing, the Court expressed its intention to refer some of the outstanding issues to United States Magistrate Judge A. Kathleen Tomlinson. The Plaintiffs requested that, pending such a hearing, the Defendants deposit the proceeds from the sale of the 596 Property into the LIB escrow account. However, the Defendants indicated that the attorney for the party in control of such proceeds, Lawrence Omansky, Esq., was not present in Court. The Court then directed Omansky to appear in this Court on Monday April 7, 2014 for a continued hearing regarding whether the proceeds of the sale of the 596 Property constituted a PACA asset.

During the afternoon of April 4, 2014, the Plaintiffs filed an amended complaint, adding Brook, HB, Stuls, and Yolanda Hoey as defendants. In the amended complaint, the Plaintiffs allege that the newly-added Defendants unlawfully retained PACA trusts assets and that they were alter egos of LIB and Suffolk. In particular, the amended complaint alleges that the proceeds from the sale of produce by LIB and Suffolk were transferred to Hoey Jr., Yolanda Hoey, Brook, HB, and Stuls; such transfers were made in breach of the PACA trust; and Hoey Jr., Yolanda Hoey, Brook, HB, and Stuls continue to hold such PACA assets.

On April 7, 2014, the Court continued the hearing that was commenced on April 4, 2014. The Court acknowledged that since LIB and Suffolk had filed for Chapter 11 Bankruptcy on April 3, 2014, an automatic stay pursuant to 11 U.S.C. § 362(a) was in effect with respect to those two corporate Defendants. Also, the Court granted the Plaintiffs' request for an evidentiary hearing as to (1) the present location of the proceeds from the sale of the 596 Property and (2) whether the 596 Property is a PACA asset subject to the Consent Injunction. The Court referred the evidentiary hearing to Magistrate Judge A. Kathleen Tomlinson. That hearing is currently scheduled to take place on June 23 and June 24, 2014.

On May 2, 2014, Brook, HB, and Stuls (the "moving defendants") moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6) to dismiss the amended complaint as against them for failure to state a claim upon which relief can be granted. The Plaintiffs oppose the motion.

In order to survive a motion to dismiss, Fed.R.Civ.P. 8 requires that a plaintiff proffer "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

As an initial matter, the Court briefly discusses the law concerning PACA as pertinent to the instant motion to dismiss. "PACA was passed to protect sellers of produce who must often sell produce quickly on credit before their inventory becomes unsaleable." *Hop Hing Produces Inc. v. X & L Supermarket, Inc.,* CV 2012–1401(ARR)(MDG), 2013 WL 1232948, at *5 (E.D.N.Y. Mar. 26, 2013). "The assurance the trust provision gives [is] that raw products will be paid for promptly and that there is a monitoring system provided for under the Act ..." *Nickey Gregory Co. v. AgriCap, LLC,* 597 F.3d 591, 599 (4th Cir. 2010) (quoting H.R.Rep. No. 98–543, at 4 (1984), reprinted in 1984 U.S.C.C.A.N. 405). PACA "requires the purchaser of agricultural commodities to hold any receivables or proceeds from the sale of the commodities 'in trust for the benefit of all unpaid suppliers or sellers of such commodities ... until full payment of the sums

owing in connection with such transactions has been received by the suppliers.'" *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 615 (2d Cir.1998) (quoting U.S.C. § 499e(c)(2)). This statute "gives unpaid suppliers ... priority over secured lenders ... to PACA trust assets." *Albee Tomato*, 155 F.3d at 615.

■ A PACA trust is "made up of perishable agricultural commodities received in all transactions, all inventories of food ... and all receivables of proceeds from the sale of such commodities ..." *In re Kornblum & Co., Inc.*, 81 F.3d 280, 286 (2d Cir.1996) (citation omitted). There is "a single PACA trust [that] exists for the benefit of all sellers to a Produce Debtor." *Id.* A PACA trust "is continuous and exists from the moment produce is received until all suppliers are paid in full." *Ger–Nis Int'l, LLC v. FJB, Inc.*, 07–cv–898 (CM), 2008 WL 2600074, at *4 (S.D.N.Y. June 25, 2008); *see also J.A. Besteman Co. v. Carter's, Inc.*, 439 F.Supp.2d 774, 778 (W.D.Mich.2006) ("a PACA trust arises when the first PACA debt is incurred and continues thereafter until all sellers are paid in full").

■ In analyzing whether a third party is liable for PACA debts, courts undertake a two-part analysis: 1) whether the transfer of assets was a breach of the PACA trust, and 2) whether the third party transferee should be liable for the breach. *American Banana Co. v. Republic National Bank*, 362 F.3d 33, at 41 (2d Cir.2004) ("The first issue is whether the trustee is liable for dissipating the trust by using trust assets to pay non-PACA creditors. The second issue is whether the bank is liable for receiving funds ...."); *see also Eastern Potato Dealers, Inc. v. TNC Packing Corp.*, 08–cv–6280 (CJS), 2011 WL 2669632, at *12 (W.D.N.Y. July 7, 2011) ("a third party who receives PACA trust property is not liable to the trust beneficiaries, unless the PACA trustee's act in giving the property was breach of trust, and unless the third party had notice of the breach").

■ Under general principles of trust law, "in the PACA context, a duty of inquiry arises when a third party transferee has knowledge that a produce purchaser/trustee is not paying produce suppliers or is in financial difficulty." *Consumers Produce Co., Inc. v. Volante*, 16 F.3d 1374, 1383 (3d Cir.1994). A third party has notice of a breach of trust not only when he actually knows of the breach, but also when he should have known of it-that is, a third party should have known of a breach of trust when facts under the circumstances would lead a reasonably intelligent and diligent person to inquire whether the trustee is a trustee and whether he is committing a breach of trust. Restatement (Second) of Trusts, § 297, Comment A.

■ The amended complaint alleges that LIB, Suffolk, and the moving defendants transferred PACA trust funds between and among themselves. The amended complaint further contends that the Defendant Thomas J. Hoey is the Chief Executive Officer of LIB, Suffolk, and the moving defendants.

In addition, when considering whether the moving defendants had actual or constructive notice of a breach, the Court takes note of the allegations with respect to the commonality of operations and ownership between LIB, Suffolk, and the moving defendants. In particular, the amended complaint alleges that these entities use the same address and phone number; use the same banking institutions; have many of the same customers and suppliers; and commingle corporate funds.

Construing the allegations in a light most favorable to the Plaintiffs, the Court concludes that the Plaintiffs have set forth

sufficient allegations from which it could be inferred that the moving defendants unlawfully retained PACA trust assets.

■ For substantially similar reasons, the Court declines, at this stage of the litigation, to dismiss the Plaintiffs' cause of action sounding in alter ego liability against the moving defendants. The determination of alter-ego liability is a fact-intensive inquiry, whose primary concerns are "(1) whether the entities in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir.2008). Here, without a fuller record aided by discovery, the Court cannot resolve this claim as a matter of law. *Milestone Shipping, S.A. v. Estech Trading LLC*, 764 F.Supp.2d 632, 636 (S.D.N.Y.2011).

For the foregoing reasons, the Court denies the moving defendants' motion to dismiss the amended complaint.

**SO ORDERED.**