09-1461-cr
United States v. Gunn

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 17th day of February, two thousand ten.

PRESENT:   GUIDO CALABRESI,
           REENA RAGGI,
                     *Circuit Judges*,
           JOHN G. KOELTL,[*]
                     *District Judge*.

-------------------------------------------------------------------

UNITED STATES OF AMERICA,

                     *Appellee*,

          v.                                        No. 09-1461-cr

RODERICK GUNN, also known as ZAPPA,

                     *Defendant-Appellant*,

ALTON DAVIS, DERRILYN NEEDHAM, also known as INGRID, RONALD KNIBBS, also known as BIRDIE,

                     *Defendants*.[1]

-------------------------------------------------------------------

APPEARING FOR APPELLANT:      RICHARD PALMA, New York, New York.

---

[*] District Judge John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

[1] The Clerk of the Court is directed to amend the caption to read as shown above.

APPEARING FOR APPELLEE:     JOHN J. O'DONNELL, Assistant United States Attorney (Daniel A. Braun, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Leonard B. Sand, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the district court's orders entered on March 11, 2009, and April 22, 2009, are AFFIRMED.

Defendant Roderick Gunn appeals from an order denying his pre-trial motion to dismiss on double jeopardy grounds those counts of a pending indictment charging him with (1) conspiring from July 2002 through January 2003 to rob suspected narcotics traffickers of drugs and drug proceeds in violation of 18 U.S.C. § 1951(a) (Count One); and (2) conspiring from July 2002 through January 2003 to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count Eight). Gunn argues that Counts One and Eight charge him with conspiracies subsumed within broader robbery and narcotics conspiracies charged in an information to which he pleaded guilty pursuant to a cooperation agreement with the government on December 19, 2003, see United States v. Gunn, 03 Cr. 1277 (S.D.N.Y. filed Oct. 23, 2003), thus placing him twice in jeopardy for identical crimes in violation of the Fifth Amendment. Gunn further appeals

2

the order denying his motion to reconsider the double jeopardy ruling. In reviewing these challenges, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.  Jurisdiction and Standard of Review

Although we generally lack jurisdiction to review rulings before a final judgment has been entered, see 28 U.S.C. § 1291; United States v. MacDonald, 435 U.S. 850, 853-54 (1978), the denial of a pre-trial motion to dismiss criminal charges on double jeopardy grounds is immediately appealable under the "collateral order" doctrine, see United States v. Olmeda, 461 F.3d 271, 278 (2d Cir. 2006). We review de novo the denial of a double jeopardy motion. See United States v. Carlton, 534 F.3d 97, 101 (2d Cir. 2008).

2.  Defendant's Double Jeopardy Challenge

The Double Jeopardy Clause of the Fifth Amendment protects persons from successive prosecutions for the same offense. See United States v. Estrada, 320 F.3d 173, 180 (2d Cir. 2003). In determining whether successive conspiracy prosecutions target the same offense, we consider a range of factors, including:

> (1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

3

United States v. Korfant, 771 F.2d 660, 662 (2d Cir. 1985); accord United States v. Estrada, 320 F.3d at 180-81. A defendant bears the initial burden of making a colorable showing that successive prosecutions charge the same conspiracy, whereupon the government must demonstrate by a preponderance of the evidence that a reasonable person familiar with the totality of the facts and circumstances would construe the initial prosecution, at the time jeopardy attached, to cover the offense charged in the subsequent prosecution. See United States v. Olmeda, 461 F.3d at 282-83.

> a.    The Robbery Conspiracies

While the robbery conspiracies charged in the indictment and information involve similar statutory offenses and some overlapping personnel, methods, and geographic scope, they are distinguishable in several critical respects. The challenged indictment charges a robbery conspiracy that ran from July 2002 through January 2003 among a group purportedly led by Alton Davis, one of Gunn's three named co-defendants. These conspirators allegedly agreed to commit two particular robberies, one in Elmont, New York, the other on Wickham Avenue in the Bronx, both of which resulted in murders committed by Davis and neither of which involved the impersonation of police officers. By contrast, the 2003 information charged a conspiracy that ran from the summer of 2001 to the summer of 2002, a largely distinct time period, in which Davis is not alleged to have participated.[2] The six robberies

---

[2] Although a police source had stated before Gunn's guilty plea that Gunn, Davis, and others were part of a group involved in police-impersonation robberies, the record does not

4

alleged in connection with that earlier conspiracy generally involved the robbers' impersonation of police officers.[3] Meanwhile, none resulted in murder. Like the district court, we conclude that the murders allegedly committed by Davis in connection with the pending robbery conspiracy highlight the significance of his leadership role in that scheme, distinguishing the conspiracies as to both personnel and the level of violence employed to carry out the particular robbery objectives.

In urging otherwise, Gunn argues that Davis relied in part on participants in the first conspiracy to carry out the pending conspiracy. This is insufficient to indicate that one conspiracy so depended on the existence, success, or failure of the other to achieve its own objective that the schemes are one. See United States v. Estrada, 320 F.3d at 184 (finding

_____

indicate whether Davis committed or conspired to commit any of the robberies listed in support of the information. Indeed, notes from Gunn's proffer sessions indicate that although he purportedly identified each participant in the robbery conspiracy to which he pleaded guilty, he specifically failed to name Davis. These circumstances support a preponderance finding of distinct conspiracies. Of course, if trial evidence is otherwise, Gunn can renew his double jeopardy challenge. See supra Part 2.b.

[3] See United States v. Davis, No. 06 Cr. 911, 2009 WL 1098477, at * 2 (S.D.N.Y. Apr. 21, 2009) (stating that "most (though not all) of the robberies charged in the Information involved entry through the use of police impersonation"). But see App. at 283, 453-57 (suggesting that in pre-plea proffer Gunn indicated that all six robberies involved police impersonation in one form or another). In its appellate brief, the government relies on police impersonation during only five of these six robberies. Whether police impersonation was involved in the sixth robbery is not of sufficient import to alter our determination that the robbery conspiracies alleged in the information and pending indictment are factually distinct.

5

no interdependence where success or failure of one conspiracy was "in no way dependent" on the other).

Gunn submits that the conspiracies are nevertheless part of a single, overarching "hub and spokes" scheme to rob narcotics traffickers, featuring Gunn and co-defendant Derrilyn Needham as central organizers who provided information and support to various crews. Appellant's Br. at 30. Gunn's argument fails to acknowledge the limited scope of the conspiracy to which he pleaded guilty in 2003 – a scope narrowed by his own deliberate and conceded failure to disclose his involvement in the Elmont and Wickham robberies during pre-plea proffer sessions despite his obligation to reveal all criminal conduct. See generally United States v. Olmeda, 461 F.3d at 285 (observing less willingness "to construe an indictment as a bar to future prosecutions where the government was not aware, and had no reason to be aware, that the defendant had committed additional crimes that were arguably covered by expansive language in the [charging document]").[4] That the conspiracy charged in the information did not encompass an agreement to commit these undisclosed robberies is convincingly evidenced by their absence from an appendix to the agreement listing the criminal conduct relevant to the plea. Gunn cannot expand the scope of his guilty plea now, after the fact, either by reference to the broader conspiracy alleged in United States v. Robles,

---

[4] The record suggests that the government may have learned of Gunn's involvement in the Elmont robbery prior to his plea. We need not pursue the extent of the government's knowledge here because, in any event, the record supports a preponderance finding of factually distinct conspiracies.

6

No. 04 Cr. 1036 (S.D.N.Y. filed Sept. 16, 2004), a related case tried two years after Gunn's plea to which he was not a party, or to the theoretical possibility that the two conspiracies at issue might have been pleaded as an overarching whole, see United States v. Olmeda, 461 F.3d at 286 n.14 (noting relevance of record evidence "reflecting an understanding between the parties as to the scope" of conduct covered by guilty plea); 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3918.5, at 502 (2d ed. 1991) (observing that scope of jeopardy in plea context is "defined by the negotiated plea agreement, which imposes obligations on the defendant and attendant risks"); see also United States v. Macchia, 35 F.3d 662, 668 (2d Cir. 1994) (observing that judicial determination that successively charged conspiracies were distinct did not foreclose possibility that in theory one could have been properly pleaded within parameters of other).

While this court has recognized the danger of the government's retrying defendants "on smaller and smaller conspiracies, wholly contained within the scope of a large conspiracy, until it finds one small enough to be proved to the satisfaction of a jury," United States v. Calderone, 982 F.2d 42, 48 (2d Cir. 1992), no such concern is present here. The record reveals two factually distinct, independent robbery conspiracies carried out at different times, by different means, under different leadership. See United States v. Broce, 488 U.S. 563, 571 (1989) (observing that "multiple agreements to commit separate crimes constitute multiple conspiracies"); United States v. Macchia, 35 F.3d at 668 (observing that Korfant factors are "not a prescription for drafting indictments").

7

Accordingly, because we conclude that the government has carried its burden of demonstrating that the indictment and information charge distinct robbery conspiracies, we reject this part of Gunn's double jeopardy challenge as without merit.

b.    The Drug Dealing Conspiracies

Gunn's argument that the narcotics conspiracy charged in the pending indictment is subsumed within the narcotics conspiracy to which he pleaded guilty in 2003 is similarly unavailing.  While these two conspiracies overlap temporally, the record supports a preponderance finding that they are otherwise factually distinct.  Notably, the Elmont and Wickham robberies are identified as overt acts committed in support of the pending marijuana conspiracy.  By contrast, the marijuana conspiracy to which Gunn pleaded guilty alleges only two discrete sales of marijuana, one in 2002 and the other in 2003.  The identification of these sales as the crux of the admitted agreement apparently derives from Gunn's own disclosure that he helped to broker the sale of two loads of marijuana.  There is no indication in the record that the conspiracy charged in the information contemplated obtaining drugs by robbery or that Davis was involved in the scheme.

Our interlocutory rejection of Gunn's double jeopardy claim does not preclude him from renewing this challenge should the facts or evidence adduced at trial so warrant.  See United States v. Mallah, 503 F.2d 971, 987 (2d Cir. 1974) (observing that "prosecutors should be prepared to demonstrate from the proof at the two trials that the criminal agreements are indeed separate and distinct"); see also United States v. Laguna-Estela, 394

8

F.3d 54, 59 (1st Cir. 2005) (noting that defendant may reassert double jeopardy claim if trial evidence warrants); United States v. Stricklin, 591 F.2d 1112, 1119 (5th Cir. 1979) (same).

c.      The Motion for an Evidentiary Hearing

Gunn submits that the district court abused its discretion in declining to hold an evidentiary hearing before ruling on his double jeopardy challenge. We disagree. While an evidentiary hearing may sometimes be necessary to allow a defendant to demonstrate a colorable double jeopardy claim, here Gunn made a showing sufficient to shift the burden of proof to the government. Cf. United States v. Persico, 832 F.2d 705, 712 (2d Cir. 1987) (observing that district courts assessing pre-trial double jeopardy motions conduct evidentiary hearings "if appropriate"). Because the district court's determination that the government had carried its burden was amply supported by the record, we identify no abuse of discretion in its decision not to hold a hearing. Cf. United States v. Pavloyianis, 996 F.2d 1467, 1475 (2d Cir. 1993) (holding in related context that no evidentiary hearing was required "where the relevant facts can be ascertained from the record").

3.      The Motion To Reconsider

We similarly identify no abuse of discretion in the district court's denial of Gunn's motion for reconsideration because he identifies no "controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see Universal Church v. Geltzer, 463 F.3d 218, 228 (2d Cir. 2006).

9

4.       The Motion to Expand the Record and Allow Additional Briefing

After argument, Gunn moved to expand the record on appeal to include, inter alia, a February 3, 2010 memorandum filed by the government in the pending case proffering "other crimes evidence" as proof of the charged robbery and narcotics conspiracies.  Gunn submits that the filing undercuts the government's position before this court that the pending conspiracy charges are distinct from those to which Gunn pleaded guilty.  The matter is best addressed in the first instance by the district court, which has yet to determine whether the proffered evidence is relevant to or admissible in the pending case and, if so, for what purpose.  Accordingly, the motion to expand the appellate record is denied without prejudice to Gunn renewing his double jeopardy motion in the district court based on the government's recent filing.  We, of course, express no view on the merits of such a claim.

Accordingly, the orders of the district court are AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court