*United States v. Gunn*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2025

Argued: October 22, 2025
Decided: December 19, 2025

No. 24-2430-cr

———————————————————————

UNITED STATES OF AMERICA,

*Appellee,*

v.

RODERICK GUNN, AKA ZAPPA,

*Defendant-Appellant.*[*]

———————————————————————

Before:      LEVAL, LYNCH, and SULLIVAN, *Circuit Judges.*

Defendant Roderick Gunn appeals from an amended judgment of conviction entered by the United States District Court for the Southern District of New York (Alvin Hellerstein, *J.*), after a jury trial before the late Judge William S. Pauley III, finding him guilty of conspiracy to commit Hobbs Act robbery (Count One), attempt to commit Hobbs Act robbery (Count Three), and conspiracy to distribute and to possess with intent to distribute 100 kilograms or more of marijuana (Count Eight). The district court sentenced Gunn to 180 months' imprisonment on Count One and to another 180 months

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform to the caption above.

on Count Three, to run consecutively, and to 60 months on Count Eight, to run concurrently. On appeal, Gunn principally contends that the district court erred in imposing consecutive sentences (which, in the aggregate, exceeded the Hobbs Act's 20-year maximum allowable sentence for a single offense) on the two inchoate Hobbs Act charges (Counts One and Three), which related to the same robbery, because Congress did not clearly authorize consecutive sentences for those crimes. We hold that district courts may impose consecutive sentences, even exceeding in the aggregate the Act's maximum punishment, for attempted Hobbs Act robbery and conspiracy to commit Hobbs Act robbery. Finding no error, we AFFIRM.

YUANCHUNG LEE, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant*.

JANE YUMI CHONG (James Ligtenberg, *on the brief*), Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

LEVAL, *Circuit Judge*:

Defendant Roderick Gunn appeals from an amended judgment of conviction entered by the United States District Court for the Southern District of New York (Alvin Hellerstein, *J.*), after a jury trial before the late Judge William S. Pauley III, finding him guilty of conspiracy to commit Hobbs Act robbery (Count One), attempt to commit Hobbs Act robbery (Count Three), and conspiracy to distribute and to possess with intent to distribute 100

2

kilograms or more of marijuana (Count Eight). The district court sentenced Gunn to 180 months' imprisonment on Count One and to another 180 months on Count Three, to run consecutively, and to 60 months on Count Eight, to run concurrently. On appeal, Gunn principally contends that the district court erred in imposing consecutive sentences (which, in the aggregate, exceeded the Hobbs Act's 20-year maximum allowable sentence for a single offense) on the two inchoate Hobbs Act charges (Counts One and Three), which related to the same robbery, because Congress did not clearly authorize consecutive sentences for those crimes.

We hold that district courts may impose consecutive sentences, even exceeding in the aggregate the Act's maximum punishment, for attempted Hobbs Act robbery and conspiracy to commit Hobbs Act robbery. Finding no error, we AFFIRM.

## BACKGROUND

### I. Offense Conduct and Indictment

Between 2001 and 2003, Gunn was a member of a crew that committed armed robberies of narcotics traffickers in order to steal drugs and drug proceeds. On two occasions relevant to this appeal, the robberies resulted in

3

murder. First, Gunn helped plan but was not present at an October 31, 2022, robbery of a residence in Elmont, New York (the "Elmont Robbery"), during which Gunn's co-conspirator Alton Davis shot and killed Stephanie Laing. Second, Gunn was present for and participated in the January 21, 2003, robbery of a residence on Wickham Avenue in the Bronx, New York (the "Wickham Robbery"), during which Davis shot and killed Gary Grey.

On August 16, 2007, the government filed an eight-count superseding indictment against Gunn, Davis, and two other individuals for their involvement in the Elmont and Wickham Robberies. Six of the eight counts charged Gunn. In particular, Count One charged Gunn and his co-defendants with conspiracy to commit Hobbs Act robberies of drug dealers, in violation of 18 U.S.C. § 1951. Count Two charged Gunn and his co-defendants with attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2, based on the Elmont Robbery. Count Three charged Gunn and his co-defendants with attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2, based on the Wickham Robbery. Count Six charged Gunn and his co-defendants with using and carrying, and aiding and abetting the use, carrying, and possession of, handguns, which were discharged, during and in relation to the Hobbs Act

4

robbery conspiracy charged in Count One and the attempted Hobbs Act robbery charged in Count Three (the Wickham Robbery), in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. Count Seven charged Gunn and his co-defendants with aiding and abetting the use of a handgun to shoot and kill an individual during and in relation to the Hobbs Act robbery conspiracy charged in Count One and the attempted Hobbs Act robbery charged in Count Three (the Wickham Robbery), in violation of 18 U.S.C. §§ 924(j)(1) and 2. Count Eight charged Gunn with conspiring to distribute and to possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846.[1]

## II.     Trial and Sentencing

On April 19, 2010, Gunn and Davis proceeded to trial before Judge Pauley. On May 3, 2010, the jury acquitted Gunn on Count Two (attempted

---

[1] Gunn was not charged in Counts Four or Five. Count Four charged Davis with possessing a firearm, which was discharged, during and in relation to the Hobbs Act robbery conspiracy charged in Count One and the attempted Hobbs Act robbery charged in Count Two (the Elmont Robbery), in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2. Count Five charged Davis with using a semiautomatic pistol to shoot and kill an individual during and in relation to the Hobbs Act robbery conspiracy charged in Count One and the attempted Hobbs Act robbery charged in Count Two (the Elmont Robbery), in violation of 18 U.S.C. §§ 924(j)(1) and 2.

5

Hobbs Act robbery based on the Elmont Robbery), but found him guilty on the remaining counts.[2] Davis was convicted on all counts.

On August 23, 2010, Judge Pauley sentenced Gunn to life imprisonment on Count Seven, 20 years on each of Counts One and Three, and 40 years on Count Eight, all to run concurrently with each other and with an undischarged term of a sentence imposed in an earlier federal case.[3]

### III. Section 2255 Motion and Resentencing

On April 28, 2014, Gunn moved to vacate his judgment of conviction

---

[2] On Count Eight, Gunn was convicted on the lesser-included offense of conspiracy to distribute and possess with intent to distribute 100 kilograms or more of marijuana, *see* 21 U.S.C. § 841(b)(1)(B)(vii), rather than 1,000 kilograms or more, *see id.* § 841(b)(1)(A)(vii).

[3] On June 20, 2003, Gunn was arrested pursuant to a criminal complaint charging him with being an illegal alien in possession of a firearm. *See* 03 Cr. 1277. On December 19, 2003, following multiple proffer sessions with the United States Attorney's Office during which Gunn disclosed criminal acts in which he and others were involved, Gunn, in exchange for a cooperation agreement, pled guilty to a six-count information alleging, among other things, conspiracy to commit robberies of narcotics dealers and to distribute marijuana. Thereafter, Gunn admitted to robberies about which he had not informed the government prior to pleading guilty, including his involvement in the Elmont and Wickham robberies. He admitted to having been involved in twelve other drug-related robberies and burglaries that he had not previously disclosed. The government rejected Gunn's offer to cooperate. After the court denied his motion to withdraw his guilty plea, Gunn was sentenced to 141 months' imprisonment followed by five years' supervised release.

6

under 28 U.S.C. § 2255. In a letter supplementing the motion, he argued that his conviction under §§ 924(c) (Count Six) and 924(j) (Count Seven) must be vacated in light of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), because Hobbs Act robbery conspiracy and attempted Hobbs Act robbery no longer qualified as predicate "crime[s] of violence" under § 924(c). On October 19, 2022, after the case was reassigned to Judge Hellerstein, the government submitted a letter agreeing that Gunn's conviction on Counts Six and Seven must be vacated in light of decisions by the Supreme Court and this court following *Johnson*, namely, *United States v. Davis*, 588 U.S. 445 (2019), *United States v. Taylor*, 596 U.S. 845 (2022), and *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019), and requesting that Gunn be resentenced on the remaining counts.

In its Supplemental Presentence Report, the Probation Office recalculated the U.S. Sentencing Guidelines (the "Guidelines") range assuming the vacatur of Counts Six and Seven. In particular, the Probation Office determined that the appropriate offense level was 43, based on the cross-reference for first-degree murder under §§ 2B3.1(c) and 2A1.1 of the Guidelines, and that the appropriate criminal history category was III, based on a state

7

conviction for a 2003 attempted robbery in Manhattan, and Gunn's convictions in the earlier federal case. The Probation Office acknowledged that the Guidelines range for the re-calculated offense level and criminal history would be life imprisonment, but found that the appropriate Guidelines term was 960 months' (or 80 years') imprisonment, the total statutorily authorized maximum sentences for the three counts of conviction.

The government filed a sentencing submission in which it urged the court to impose the statutory maximum and Guidelines sentence of 80 years, comprising 20 years' imprisonment on Count One, 20 years on Count Three, and 40 years on Count Eight, to run consecutively. Gunn filed his own sentencing submission acknowledging that the statutory maximum and Guidelines recommendation was 80 years but arguing for a sentence of time served.

At the resentencing on May 6, 2024, Judge Hellerstein granted Gunn's § 2255 motion and vacated his conviction on Counts Six and Seven. Judge Hellerstein then proceeded to a *de novo* resentencing, during which he adopted the factual findings and Guidelines calculation in the Supplemental Presentence Report and imposed a sentence of 360 months' imprisonment, to

8

run consecutive to the undischarged portion of the sentence imposed in Gunn's prior federal case. Judge Hellerstein clarified on the record that he was imposing "180 months on Count One and 180 months on Count Three to run consecutively, and 60 months on Count Eight to run concurrently." App'x at 153–54. Gunn did not object to the district court's adoption of the factual findings and Guidelines calculation in the Supplemental Presentence Report, or to the sentence imposed.

Gunn appeals from the May 6, 2024, amended judgment and resentencing.

## DISCUSSION

On appeal, Gunn principally contends that the district court erred by imposing consecutive terms of imprisonment on his Hobbs Act robbery conspiracy and attempted Hobbs Act robbery sentences. Through supplemental *pro se* briefing, Gunn argues that the district court further erred by: (1) counting certain prior convictions toward his criminal history score; (2) applying the Guidelines' first-degree-murder cross-reference; (3) declining to apply a three-level reduction to his offense level under U.S.S.G. § 2X1.1(b)(1)–(2); (4) failing to consider various "non-frivolous" arguments

9

regarding sentencing or to adequately explain its decision to impose consecutive sentences on Counts One and Three; and (5) failing to consider Amendment 826 to the Guidelines, which excludes acquitted conduct from the definition of relevant conduct. We address each argument in turn.

## I.    Imposition of Consecutive Sentences for Robbery Conspiracy and Attempted Robbery Under the Hobbs Act

Gunn argues that the district court erred in imposing consecutive sentences for two convictions, one for Hobbs Act robbery conspiracy, and another for attempted Hobbs Act robbery, especially because the consecutive terms in the aggregate exceeded the Act's statutory maximum sentence for a single offense. "We review a challenge to the substantive reasonableness of a sentence, including the decision as to whether to impose a concurrent or consecutive sentence, under the deferential abuse-of-discretion standard." *United States v. Rivera*, No. 23-6116-cr, 2024 WL 4448848, at *2 (2d. Cir. Oct. 9, 2024) (summary order) (citing *United States v. Rodriguez*, 715 F.3d 451, 451 (2d Cir. 2013)). However, an abuse of discretion can be found when a decision is predicated on an error of law, and where, as here, an appellant argues that consecutive sentences are not permitted as a matter of law, we review that legal question *de novo. See ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105,

10

110 (2d Cir. 2009). Because Gunn failed to challenge his sentence in the district court, we review for plain error. *See United States v. Hendricks*, 921 F.3d 320, 326 (2d Cir. 2019); Fed. R. Crim. P. 52(b).[4] For an error to be "plain," it must be "clear or obvious, rather than subject to reasonable dispute." *United States v. Prawl*, 149 F.4th 176, 188 (2d Cir. 2025) (internal quotation marks omitted).

Gunn contends that imposition of consecutive penalties on a defendant who violates two provisions of the same statute is permissible only where Congress has clearly authorized it, and there is nothing in the structure or legislative history of the Hobbs Act, 18 U.S.C. § 1951(a), to indicate that Congress intended sentences for robbery conspiracy and attempted robbery to

---

[4] We reject Gunn's argument that a "relaxed" form of plain-error review applies here. Gunn Br. at 11. As Gunn acknowledges, we have employed a "relaxed" form of plain-error review only "in those rare cases in which the defendant lacked sufficient prior notice" of an aspect of his sentence. *United States v. Matta*, 777 F.3d 116, 121 (2d Cir. 2015). Here, Gunn had ample notice of the potential that the district court would impose consecutive sentences for Counts One and Three: the Supplemental Presentence Report, the government's sentencing submission, and even Gunn's own sentencing submission all contemplated that scenario. Gunn received further notice of, and an opportunity to object to, the imposition of consecutive sentences on Counts One and Three at the resentencing hearing before Judge Hellerstein. Under such circumstances, ordinary plain-error review is appropriate. We note, however, that even if we were to apply the relaxed plain-error standard, we would reach the same result.

11

run consecutively where the offenses "arise from the same set of facts." Gunn

Br. at 9, 12.[5] We disagree.

The federal statute governing the "[i]mposition of concurrent or consecutive terms" in cases involving multiple counts of conviction expressly provides that, generally, "[i]f multiple terms of imprisonment are imposed on a defendant at the same time, . . . the terms may run concurrently or consecutively." 18 U.S.C. § 3584(a). [6] And, as this court has previously

---

[5] Gunn does not dispute that Hobbs Act robbery conspiracy and attempted Hobbs Act robbery are separate offenses for purposes of double jeopardy under *Blockburger v. United States*. *See* 284 U.S. 299, 304 (1932) (holding that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not"). Rather, he contends that the *Blockburger* rule is irrelevant to this appeal because (i) *Blockburger* applies only when comparing offenses in separate statutes, not offenses in separate clauses within the same statute; and (ii) courts need reach the question whether offenses are "separate" under *Blockburger* only if it is clear that Congress intended multiple penalties, and the question arises whether the imposition of multiple penalties is constitutionally permissible. We agree that we need not address the *Blockburger* test, because we conclude, based in part on our reading of the text and background of the Hobbs Act, that Congress clearly intended to allow consecutive sentences for attempt and conspiracy, and Gunn does not raise a constitutional double jeopardy argument.

[6] The statute further provides that consecutive sentences may not be imposed "for an attempt and for another offense that was the sole objective of the attempt." *Id.* That exception does not apply here.

12

recognized, "Congress has not prohibited consecutive sentences for attempts and conspiracies that have the same object." *United States v. Rahman*, 189 F.3d 88, 158 n.36 (2d Cir. 1999). It follows that courts may impose consecutive sentences on a defendant convicted for both Hobbs Act robbery conspiracy and attempted Hobbs Act robbery. *See, e.g., United States v. Collymore*, No. 23-7333, 2024 WL 4707184, at *1 (2d Cir. Nov. 7, 2024) (summary order).

Gunn's argument to the contrary relies chiefly on *Prince v. United States*, in which the Supreme Court held that the crimes of entering a bank with intent to commit a robbery and robbery are "merged" "when the latter is consummated," and that, under such circumstances, consecutive sentences for the two offenses were not permissible. 352 U.S. 322, 324, 329 (1957). In reaching this conclusion, the Court concluded that it was "a fair inference from the wording in the [Federal Bank Robbery] Act . . . that the unlawful entry provision was inserted to cover the situation where a person enters a bank for the purpose of committing a crime, but is frustrated for some reason before completing the crime." *Id.* at 328. Absent any legislative history to the contrary, the Court concluded that "when Congress made either robbery or an entry for that purpose a crime [with a maximum allowable punishment of 20 years], it

13

intended that the maximum punishment for robbery should remain at 20 years, but that, even if the culprit should fall short of accomplishing his purpose, he could be imprisoned for 20 years for entering with the felonious intent." *Id.* at 328–29 (footnote omitted). In other words, while it was "manifestly the purpose of Congress to establish lesser offenses," there was "no indication that Congress intended also to pyramid the penalties." *Id.* at 327.

Gunn contends that *Prince* is the controlling authority where, as here, there is nothing in the text or legislative history clearly establishing that two offenses under a statute be punished consecutively. His argument overreads *Prince*. In finding that entry with intent to rob and robbery offenses could not be punished consecutively, the *Prince* Court emphasized the "unique" character and "limited purpose" of the Federal Bank Robbery Act, noting that "the question of interpretation is a narrow one, and [the Court's] decision should be correspondingly narrow." *Id.* at 325. The Court proceeded to analyze the text and structure of the Act in light of its "apparent purpose." *Id.* at 327–28. The Court did not suggest, as Gunn argues, that consecutive sentences are forbidden wherever legislative history is inconclusive.

We have previously recognized *Prince's* "limited scope," holding that the *Prince* rule applies only when the two offenses in question arise under statutory provisions that Congress intended to structure "in such a way as to criminalize successive stages of a single undertaking." *United States v. Weingarten*, 713 F.3d 704, 709–10 (2d Cir. 2013) (internal quotation marks omitted). Indeed, this court has extended *Prince* "only to a limited number of statutes." *Id.* at 710. In *United States v. Gore*, for example, we applied *Prince*'s merger rule to possession of a controlled substance with intent to distribute and distribution of the controlled substance, "where the distribution itself is the sole evidence of possession, or where possession is shown to exist only at the moment of distribution." 154 F.3d 34, 45–47 (2d Cir. 1998) (internal quotation marks omitted). And in *United States v. Valot*, we held that *Prince* applied to possession of a controlled substance on board an aircraft and illegal importation, where the controlled substance was carried on the aircraft only on the flight that effectuated the importation. 481 F.2d 22, 27 (2d Cir. 1973). In these cases, we concluded that Congress, by criminalizing possession of a controlled substance, intended to cover scenarios where a person takes a step toward engaging in the principal conduct prohibited by the statute, but is unable to complete the principal

offense conduct. *See Gore*, 154 F.3d at 46 (concluding that Congress criminalized possession with intent to distribute to cover "cases involving an unconsummated distribution of a controlled substance"); *Valot*, 481 F.2d at 27 (concluding that Congress criminalized possession of a controlled substance on board an aircraft to "cover cases involving the unconsummated importation of a controlled substance").

As a corollary, we have held that the *Prince* rule does not extend to cases "where the two offenses are distinct crimes and cannot be characterized as a preliminary step and a consummated act." *Weingarten*, 713 F.3d at 710. In *Weingarten*, for example, we found that *Prince* did not apply, and that consecutive sentences were therefore appropriate, where the defendant had been convicted of transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a), and of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). *See id.* at 707. We reasoned that the relevant subsections of § 2423 cover "distinct crimes" that "cannot be characterized as a preliminary step and a consummated act" and that "can be completed without contemplation of the other." *Id.* at 710.

We have never held that Congress intended to treat Hobbs Act robbery conspiracy and attempt as "successive stages of a single undertaking." *Id.* at 709 (internal quotation marks omitted). To the contrary, it is well settled that the two are fundamentally different. "[T]he essence of [conspiracy] is an agreement to commit an unlawful act," *Iannelli v. United States*, 420 U.S. 770, 777 (1975), and "the criminal agreement itself is the *actus reus*," *United States v. Shabani*, 513 U.S. 10, 16 (1994). In contrast, "the proper concern of the law of attempts is the dangerousness of the actor, as a person manifesting a firm disposition to commit a crime, not the dangerousness of his conduct." *United States v. Ivic*, 700 F.2d 51, 66 (2d Cir. 1983) (Friendly, J.), *abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994); *see also United States v. Farhane*, 634 F.3d 127, 145 (2d Cir. 2011) ("A conviction for attempt requires proof that a defendant (a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission.").

The Supreme Court recognized the distinctiveness of conspiracy offenses in *Callanan v. United States*, 364 U.S. 587 (1961). There, the Court held that a defendant convicted under the Hobbs Act of (i) the substantive crime of

17

obstructing commerce by extortion and (ii) conspiracy to obstruct commerce by extortion could be sentenced consecutively for those offenses. *Id.* at 597. In so holding, the Court called the distinction between a substantive offense and conspiracy to commit that offense "a postulate of our law," and summarized the fundamental differences as follows:

> [C]ollective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

*Id.* at 593–94. The Court observed that these features of conspiracy are "the presuppositions of the separately defined crimes in [the Hobbs Act]," and "[t]he punitive consequences that presumably flow from them must be placed in such context." *Id.* at 594; *see also id.* (attributing to Congress "a tacit purpose— in the absence of any inconsistent expression—to maintain a long-established

distinction between offenses essentially different" (internal quotation marks omitted)).

Gunn seeks to distinguish *Callanan* on the grounds that it involved conspiracy and a substantive offense, not conspiracy and attempt, and that conspiracy and attempt are "not historically distinctive crimes." Gunn Br. at 18 (internal quotation marks omitted). We are not persuaded. *Callanan* instructs that the commission of a substantive offense and a conspiracy to commit it are considered separate and distinct because conspiracy is concerned with a distinct form of "socially reprehensible conduct: collective criminal agreement." *Callanan*, 364 U.S. at 593; *see also Pinkerton v. United States*, 328 U.S. 640, 643 (1946) (holding that "the commission of the substantive offense and a conspiracy to commit it are separate and distinct"). By the same logic, an attempt to commit a substantive offense and a conspiracy to commit the substantive offense are also distinct; unlike conspiracy, attempt is concerned with the harm from an individual "manifesting a firm disposition to commit a crime." *Ivic*, 700 F.2d at 66.

Accordingly, the district court did not err, let alone plainly err, in sentencing Gunn to consecutive terms of imprisonment on Counts One and

Three. *See, e.g., Collymore*, 2024 WL 4707184, at *1 (affirming consecutive sentences for Hobbs Act robbery conspiracy and attempt to commit Hobbs Act robbery).[7] As Gunn's engagement in a conspiracy to violate the Hobbs Act and in an attempt to violate the Hobbs Act are two separate criminal violations of the Hobbs Act, for which consecutive sentences are appropriate, we find no merit to his further argument that the consecutive sentences may not in the aggregate exceed the Act's statutory maximum sentence for a *single* violation of the Act.

## II. *Pro Se* Arguments

Next, we briefly address the arguments raised in Gunn's *pro se* supplemental brief.

### a. Calculation of Criminal History Category

Gunn contends that the district court erred by counting two of Gunn's prior sentences toward his criminal history score. Because Judge Hellerstein's decision to account for these prior sentences depended on his factual finding that the underlying offenses were factually distinct from the offenses in the

---

[7] To the extent Gunn argues that his interpretation of *Prince* "flows from" the rule of lenity, we are not persuaded. As we recognized in *Collymore*, "that rule 'only serves as an aid for resolving an ambiguity; it is not to be used to beget one.'" 2024 WL 4707184, at *1 (quoting *Callanan*, 364 U.S. at 596).

instant case, we review for clear error. *See United States v. Cramer*, 777 F.3d 597, 601 (2d Cir. 2015). "A finding of fact is clearly erroneous only if, after reviewing all of the evidence, this Court is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted).

"The Sentencing Guidelines provide that criminal history points are to be allocated for prior sentences, defined as sentences previously imposed for conduct that is not part of the instant offense." *United States v. Burden*, 600 F.3d 204, 227 (2d. Cir. 2010) (citing U.S.S.G. § 4A1.2(a)(1)). "Conduct that is part of the instant offense is further defined as that which is relevant conduct to the instant offense under the provisions of § 1B1.3." *Id.* (internal quotation marks omitted). "Section 1B1.3, in turn, provides that relevant conduct includes acts that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* (internal quotation marks omitted).

At the resentencing hearing, Judge Hellerstein found that Gunn's criminal history category was III based on Gunn's prior sentences for: (i) a state conviction for a March 2003 attempted robbery committed with Ronald Knibbs—one of Gunn's co-conspirators in the Wickham Robbery—on West 111th Street in Manhattan; and (ii) his convictions in his prior federal case. Gunn

argues that these offenses "were part of the same course of conduct or common scheme or plan as the offense of conviction" in the instant case. Pro Se Br. at 8. For the reasons set forth below, Gunn has not established that Judge Hellerstein erred, let alone clearly erred, in finding that the conduct underlying these earlier sentences was "not part of the instant offense." U.S.S.G. § 4A1.2(a)(1).

First, Gunn has not established that his prior state conviction was part of the "same course of conduct or common scheme or plan" charged in this case. U.S.S.G. § 1B1.3(a)(2). In that regard, the Supplemental Presentence Report states that in March 2003, Gunn and co-conspirator Knibbs approached a victim at a residential building on West 111th Street in Manhattan, threatened the victim with a pistol while forcibly entering the victim's building, took the victim's cell phone, and then fled the scene. This conduct is readily distinguishable from the offense conduct in the instant case, which took place at different times and places, and involved an additional co-conspirator (Davis) and different victims (Laing and Grey).

The only support that Gunn provides for his contention that the state conviction is substantially connected to his conviction in this case is his assertion that, prior to trial in this case, Knibbs pled guilty to an information in

22

which the government "posit[ed]" that the robbery on West 111th Street is "part of the overall Hobbs Act conspiracy charged in Gunn's superseding indictment" in this case. Pro Se Br. at 6. But the Knibbs information does not "posit" the connection that Gunn describes. And even if it did, Gunn cites no authority for the proposition that an information filed against another defendant could alter the scope of the conspiracy charged in the instant case.[8]

Gunn has likewise failed to demonstrate that his prior federal conviction was part of the same course of conduct charged in this case. In Gunn's prior federal case, he was charged with participating in a conspiracy to rob narcotics traffickers that ran from the summer of 2001 to the summer of 2002, as well as six separate robberies or attempted robberies which generally involved the robbers' impersonation of police officers, and which did not result in murder. *See United States v. Gunn (Gunn I)*, 366 F. App'x 215, 218 (2d Cir. 2010) (summary order). In this case, by contrast, Gunn was charged with a conspiracy to rob narcotics traffickers in a period subsequent to the end of the conspiracy period

---

[8] Gunn also points out that a handgun seized during his arrest for the West 111th Street robbery was introduced at the trial in this case and used to establish his involvement in the Wickham and Elmont robberies. But Gunn fails to explain how the presence of the same handgun during multiple robberies establishes that the robberies are part of the "same course of conduct or common scheme or plan." U.S.S.G. § 1B1.3(a)(2).

23

charged in the prior federal case. In addition, the newly charged conspiracy had different leadership (Davis), and different objectives (committing the Elmont and Wickham robberies).

Although Gunn argues that it is "undisputed" that the crimes charged in his prior federal case were part of the same course of conduct as the crimes charged in this case, Pro Se Br. at 8, this court rejected that same argument in *Gunn I*. *See* 66 F. App'x at 219 (finding, for purposes of double jeopardy, that the robbery conspiracies charged in the instant case and the prior federal case are "factually distinct, independent robbery conspiracies carried out at different times, by different means, under different leadership"). We observed that the two conspiracies could be distinguished "as to both personnel and the level of violence employed to carry out the particular robbery objectives." *Id.* at 218. We further observed that the difference between the conspiracies "[was] convincingly evidenced by" the absence of the Elmont and Wickham robberies from an appendix to Gunn's cooperation agreement in his prior federal case,

which listed criminal conduct relevant to his plea in that case. *Id.* Our reasoning

in *Gunn I* applies here with equal force.[9]

Accordingly, we find no error, let alone clear error, in the district court's

use of Gunn's prior convictions to calculate his criminal history category.

### b. Applicability of First-Degree-Murder Cross-Reference

[9] At his resentencing hearing, Gunn argued that our analysis of the differences between the conspiracies in *Gunn I* does not resolve the question of appropriate criminal history level under the Guidelines because *Gunn I* "addressed double jeopardy" and therefore applied the "much stricter and narrower *Blockburger* test of whether the elements are identical." App'x at 105. But our analysis in *Gunn I* was not so confined. Indeed, we never cited *Blockburger* in our *Gunn I* opinion. Instead, we relied on our test for determining "whether successive conspiracy prosecutions target the same offense," which looks to the following factors:

> (1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

*Gunn I*, 366 F. App'x at 217 (quoting *United States v. Korfant*, 771 F.2d 660, 662 (2d Cir.1985)). These factors track the definition of "relevant conduct" under § 1B1.3 of the Guidelines. *See United States v. Lokey*, 945 F.2d 825, 839 (2d Cir. 1991) (noting that "conduct that is part of the same conspiracy is 'relevant conduct' under [U.S.S.G.] § 1B1.3").

Gunn next contends that the district court erred in calculating Gunn's offense level by applying the cross-reference for first-degree murder under Sections 2B3.1 and 2A1.1 of the Guidelines. The parties agree that plain-error review applies.

Under Sections 2B3.1 and 2A1.1 of the Guidelines, an offense level of 43 is appropriate when death results from the commission of a robbery. That is true even if the death was a consequence of someone else's actions; under Section 1B1.3(a)(1)(B) of the Guidelines, a court may, in determining the appropriate offense level for a defendant involved in "a jointly undertaken criminal activity," account for "all acts and omissions of others." In interpreting Section 1B1.3(a)(1)(B), our court has held that "in order to hold a defendant accountable for the acts of others, a district court must make two findings: 1) that the acts were within the scope of the defendant's agreement and 2) that they were foreseeable to the defendant." *United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995).

Gunn argues that the district court "did not make a particularized finding that Grey's murder was within the scope of the specific conduct and

26

objectives embraced by the agreement" between himself and Davis. Pro Se Br. at 11. We disagree.

The district court's factual findings at the resentencing hearing establish that Grey's murder was within the scope of the conspiracy to commit the Wickham Robbery. In that regard, Judge Hellerstein found that Gunn "knew that guns were used, he knew guns were available, he knew the guns were loaded." App'x at 100–01. The court further found that "[i]f you have a firearm, you intend to use the firearm," and "[a]iding and abetting the use of a firearm means that Gunn knew and nevertheless helped the use of the firearm in connection with accomplishing the Hobbs Act robbery. That was the plan." *Id.* at 101.

The district court also found that Grey's murder was foreseeable to Gunn. In particular, Judge Hellerstein stated that "[t]here is no riskier activity than going into . . . a den of narcotics criminals and seeking to take away their drugs and their money," and that "[t]he probability of violence" and "[t]he probability of use of a gun, of someone getting killed" under such circumstances[,] "is high*." Id.* at 103–04. The district court also adopted the Supplemental Presentence Report, which explained that prior to the robbery

and murder, Davis called another co-conspirator, Derrilyn Needham, to discuss the robbery plan and told her that he planned to kill Grey, and that Needham relayed Davis's plan to Gunn.

Accordingly, the district court did not err, let alone plainly err, in applying the first-degree murder cross-reference under Sections 2B3.1 and 2A1.1 of the Guidelines.

### c. Entitlement to three-level reduction under § 2X1.1(b)

Gunn argues that the district court erred by failing to apply a three-level reduction to his offense level under Section 2X1.1(b) of the Guidelines. Because Gunn did not raise this argument below, we review for plain error.

Section 2X1.1(b)(1) of the Guidelines provides for a three-level reduction in the offense level for an attempt "unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." Section 2X1.1(b)(2) provides for a three-level reduction in the offense level for a conspiracy, subject to the same exceptions as Section 2X1.1(b)(1) except that (b)(2) additionally considers the

28

acts of any co-conspirator. "The relevant question" under both sections is whether the conspiracy or attempt "ripened into a substantially completed offense or came close enough to fruition." *United States v. Downing*, 297 F.3d 52, 62 (2d Cir. 2022) (alterations adopted and internal quotation marks omitted).

Here, there is no question that the conspiracy to rob and attempted robbery of the Wickham residence came "close enough to fruition" to deny the three-point reduction under Sections 2X1.1(b)(1) and (2) of the Guidelines. *Id.* (internal quotation marks omitted). At trial, the government introduced evidence showing that during the Wickham Robbery, Gunn and Davis entered Grey's home; beat Grey and Mark Wright, an individual staying at Grey's house; tied up the victims with plastic straps and interrogated them regarding the location of drug proceeds; and, with the help of Knibbs, searched the house. After finding no drug proceeds in Grey's home and learning that Grey kept money at his girlfriend's home, Davis directed Needham and Knibbs to go to Grey's girlfriend's house to search for the drug proceeds, which they did. Back at Grey's house, Wright escaped, and Davis shot and killed Grey. Davis and Gunn then directed Needham and Knibbs to leave Grey's girlfriend's house.

That they came away with nothing is of no moment. As we have

explained, eligibility for a three-level reduction under 2X1.1(b) turns "on the *conduct* of the defendant, not on the probability that a conspiracy would have achieved success." *United States v. Medina*, 74 F.3d 413, 418 (2d Cir. 1996) (emphasis in original). And the "near accomplishment of the criminal object normally poses enough risk of actual harm, and reveals enough culpability to defeat the reduction." *Id.* (internal quotation marks omitted).

Accordingly, the district court did not err, much less plainly err, in declining to apply a three-level reduction under Section 2X1.1(b) of the Guidelines.

### d. Gunn's Arguments Regarding Sentencing

Gunn also contends that the district court failed to consider adequately various "non-frivolous arguments" regarding sentencing or explain adequately its decision to impose consecutive sentences. Pro Se Br. at 15–19. Those arguments are without merit.

First, Gunn contends that the district court failed to consider unwarranted sentencing disparities between himself and "coconspirators [(Needham and Knibbs)] who had been released," in violation of 18 U.S.C. § 3553(a)(6). Pro Se Br. at 16. But we have held that Section 3553(a)(6) "does not

30

require a district court to consider disparities between co-defendants." *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008). In any event, Needham and Knibbs were not similarly situated to Gunn because, as the district court recognized, they cooperated with the government and testified at trial.

Second, Gunn contends that the district court erred by failing to grant a downward departure to the second-degree-murder guideline. We have held that "a refusal to downwardly depart is generally not appealable, and that review of such a denial will be available only when a sentencing court misapprehended the scope of its authority to depart or the sentence was otherwise illegal." *United States v. Stinson*, 465 F.3d 113, 114 (2d Cir. 2006) (internal quotation marks omitted). Nothing in the record before us suggests that the district court did not understand its authority to grant the requested departure or that the sentence was otherwise illegal. *See United States v. Torres*, 124 F.4th 84, 106 (2d Cir. 2024) ("Absent clear evidence of a substantial risk that the judge misapprehended the scope of his departure authority, we presume the district court accurately understood its authority." (internal quotation marks omitted)).

Third, Gunn contends that Judge Hellerstein failed to explain adequately

31

his decision to impose consecutive sentences. Judge Hellerstein's reasons for imposing the sentence, however, are clear from the record. *See, e.g.*, App'x at 105 ("Gunn has been a one-man crime wave who has gone through life in this country causing havoc, ruin, and pain."); *id.* at 107 ("You're dealing with a man who was intimately involved in robberies.").

Gunn's miscellaneous objections to his sentence do not provide a basis for reversal.

### e. Applicability of Amendment 826

Finally, Gunn argues that the district court erred by refusing to consider Amendment 826 to Section 1B1.3 of the Guidelines when calculating the Guidelines range at his resentencing. We are not persuaded.

Under Amendment 826, "relevant conduct" under Section 1B1.3(c) excludes any conduct "for which the defendant was . . . acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." Here, even assuming the vacatur of Counts Six and Seven amounts to an acquittal on those charges, Amendment 826 does not apply to Gunn's new sentence at least because it was not yet in effect at the time of Gunn's May 2024 resentencing. *See* U.S. SENT'G GUIDELINES MANUAL app. C

at 265 (U.S. SENT'G COMM'N 2025) (providing that "[t]he effective date of this amendment is November 1, 2024).

Accordingly, the district court did not err in declining to consider Amendment 826 when calculating the Guidelines range.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's sentence. All pending motions are denied.